MATTER OF M/V *Hellenic Leader*

In FINE Proceedings

NOL–10/61.219

*Decided by Board October 5, 1964*

Since service on the same party of both notice to detain and deport and notice of
intention to fine is a prerequisite to fine liability under section 254(a) (3), Im-
migration and Nationality Act, the owners of a vessel are not liable to fine for
failure to detain and deport an alien crewman upon revocation of his landing
privileges when notice to detain was served on the master, acting through the
second mate.

BASIS FOR FINE: Act of 1952—Section 254(a) [8 U.S.C. 1284].

This appeal is directed to an administrative penalty of $1,000 which
the District Director at New Orleans, finding no justification whatso-
ever for reduction in the amount thereof, has ordered imposed on the
Hellenic Lines, Ltd., as owners of the M/V "Hellenic Leader." The
"Notice of Intention to Fine" (Form I–79) on which these proceed-
ings are based charges a violation of subsection (2) of the statute, in
the following language: "Failure to detain on board the alien crewman
named below (Ioannis Alexiou) after he was refused a conditional
landing permit."

The vessel made its first United States port call on this trip at
Savannah, Ga., on January 20, 1964. Immigration inspection, which
was then and there accorded its crew, resulted in the granting of D–1
conditional landing privileges to the crewman here involved. Under
the terms thereof, he was admitted for the period of time his vessel was
to remain in United States ports; in no event was his stay in the United
States to exceed 29 days; and he could not be paid off and/or dis-
charged without prior permission from an immigration officer acting
for the Attorney General.

From Savannah, the vessel proceeded coastwise to several United
States ports, eventually arriving at New Orleans on February 12, 1964,
at about 4:00 p.m. Approximately three and one-half hours later,
Border Patrol officers of the Service encountered the crewman at the
Greyhound bus terminal in New Orleans. He was in possession of a

one-way bus ticket to Baltimore, Maryland; he had $280 in his possession; he stated that he intended to go to Baltimore to work and attend night school; and that he did not intend to return to the ship.

The officers thereupon took the crewman into custody "for processing." They then served on him a notice (Form I–99) that his conditional landing permit was revoked. That form also was executed to indicate that his detention and deportation aboard the M/V "Hellenic Leader" was being directed, pursuant to section 252(b) of the Immigration and Nationality Act (8 U.S.C. 1282). Thereafter, the officers returned the crewman to his ship where they found the second officer in charge.

Their report (June 6, 1964) reflects that he informed them that he understood English sufficiently well to transact the ship's business.[1] It indicates that he was then informed of the circumstances under which the crewman was taken into custody; that his landing privileges had been revoked; and that he was being ordered detained aboard the vessel and deported. It sets forth that he was then shown Form I–259 (Notice to Detain and Deport); that its meaning was explained to him; and that he stated he understood it and about detainees, because there were two others aboard at the time.[2] It relates that he refused to sign for the Master, and claimed that he was not authorized to confine the crewman or to hire a professional guard to watch over him.[3] It recounts that, nevertheless, the crewman was left on board, and that the Form I–259 was served on the vessel and noted that it was accepted but unsigned by the Second Mate.[4] Finally, it narrates that the Border Patrol officers then left the ship at approximately 10:20 p.m. on February 12, 1964; that approximately one hour thereafter, at about 11:30 p.m. on February 12, 1964, the Border Patrol was notified by the vessel's agents that the crewman had left the ship by taxicab;[5] and that he is still at large in the United States.

As to crewman arriving aboard vessels in United States ports, 254(a) of the Immigration and Nationality Act (8 U.S.C. 1284) imposes three separate and distinct, though closely related, duties which the parties named in the statute are charged with the responsibility

---

[1] Both the protest to imposition of the fine and the brief on appeal contain the claim that the Second Mate did not understand the officers.

[2] The Border Patrol officers' report states that there were no hired guards on the vessel at that time.

[3] The appeal brief contains the unsupported contention that he did confine the crewman and instructed the ship's watchman to guard him, but that the watchman became lax in the early morning hours, and that it was then that the crewman escaped.

[4] Another Form I–259 was served on the Master the following day.

[5] This contradicts the unsupported claim contained in 3, ante.

of meeting, under pain of penalty in the amount of $1,000.00.[6] Subsection (1) requires crewman to be detained on board an arriving vessel until an immigration officer has completely inspected them, and this duty exists without the necessity of individual notice because the law itself, without more, serves as notice. Subsection (2) compels crewmen to be detained on board after inspection unless and until they are issued landing permits and again there is no requirement of individual notice for the reason, likewise, that the statute itself serves as notice to continue the detention until such time as an immigration officer lifts it by issuing a conditional landing permit. Subsection (3) necessitates the deportation of crewmen, either before or after they are permitted to land temporarily, if the Service requires it and here notice is essential because of the use of the words "if required" in the Subsection.[7]

The foregoing facts of record bring this case squarely within the scope of subsection (3) of the statute, *ante*. Therefore, the duty to deport the crewman did not arise until this requirement was communicated to the person or persons upon whom the duty was to rest. In this instance, it was the Master, acting through the Second Mate. However, the fine has been ordered imposed on the vessel's owners.[8] For the reasons hereinafter set forth, this precludes us from sustaining the present penalty. The Supreme Court has ruled that a ship owner is not liable to a fine imposed for failure to detain (deport) an alien crewman where the request for his detention (deportation) is communicated to the Master of ship, but is not brought to the knowledge of the owner because the notice is of a personal nature.[9] While that case involved predecessor legislation, it is controlling here for the reasons set forth in a prior precedent decision of this Board interpreting the present statute.[10] Accordingly, the District Director's decision must be withdrawn and the matter remanded to said official for correction of the defect hereinbefore outlined.

ORDER: It is ordered that the District Director's decision be withdrawn and that the matter be remanded to said official for appropriate action not inconsistent with the foregoing opinion.

[6] Such a fine may be reduced, but to not less than $200.00, if sufficient mitigating factors are found to exist.

[7] See *Matter of M/V "Arnfinn Stange,"* 8 I. & N. Dec. 639.

[8] See Notice of Intention to Fine (Form I-79) instituting these proceedings.

[9] *Compagnie Generale Transatlantique* v. *Elting*, 298 U.S. 217 at 223.

[10] *Matter of SS "Marilena,"* 7 I. & N. Dec. 453, at 454, last ¶.